UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**JEREMIAH THOMASSON**,

    Plaintiff,

v.

**JEFF PREMO**, et al.,

    Defendants.

No. 6:14-cv-01788-MO

OPINION AND ORDER

**MOSMAN, J.**,

Mr. Thomasson brings two claims against Defendants, both related to alleged violations of his constitutional rights. Defendants filed a Motion for Summary Judgment [82], arguing that they are entitled to judgment in their favor on both of Mr. Thomasson's claims. Mr. Thomasson responded in opposition [87], and Defendants replied [90]. For the reasons stated below, I GRANT Defendants' Motion for Summary Judgment [82].

## BACKGROUND

Mr. Thomasson is an inmate serving a sentence with the Oregon Department of Corrections (ODOC). He is currently housed in a "supermax" facility in Florida under an agreement between Oregon and Florida pursuant to an Interstate Corrections Compact. Mr.

Thomasson is on "Close Management" status in Florida, and as a result, he claims he is held in solitary isolation for 23 hours a day.

Prior to Mr. Thomasson's transfer to Florida, he was housed in administrative segregation at a prison in Oregon. He claims he was housed there for 26 days before he received a notice of hearing on February 13, 2014. While Mr. Thomasson does not dispute that he received the notice, he believes it was deficient because it was addressed to another inmate. A few days after his hearing, Mr. Thomasson was transferred to Florida.

The reasons behind Mr. Thomasson's stay in administrative segregation or transfer to a state penitentiary in Florida are not at issue in this case. Regardless of the reasons, Mr. Thomasson claims that Defendants have violated his Fourteenth Amendment procedural due process rights by (1) putting him in solitary confinement without explanation, (2) failing to provide him with adequate notice of a hearing, and (3) transferring him to Florida without a hearing. In addition, Mr. Thomasson claims that the transfer has impeded his access to the courts because he does not have access to Oregon law materials in Florida, which violates his constitutional rights.

Mr. Thomasson seeks to hold several individuals connected to the Oregon Department of Corrections liable for the alleged violations of his constitutional rights. Specifically, he brings claims against (1) Jeff Premo, the Superintendent of an Oregon State Prison, (2) Collete S. Peters, the Director of Corrections as the Oregon Department of Corrections, (3) Doug Yancey, a member of the Security Threat Management Unit at an Oregon State Prison, and (4) Michael F. Gower, the Assistant Director of Corrections at the Oregon Department of Corrections. Both claims are brought against all four individuals in their personal and official capacity.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Mr. Thomasson brings two claims against Defendants. In Claim I, Mr. Thomasson alleges that Defendants violated his procedural due process rights under the Fourteenth Amendment. In Claim II, Mr. Thomasson alleges that Defendants violated his First, Fourth, and Fourteenth Amendment rights by failing to provide him with access to a library with materials on Oregon law, thereby obstructing his access to the courts. Defendants argue they are entitled to summary judgment on both claims because Mr. Thomasson has failed to show that they violated his constitutional rights. Even if there is a factual dispute as to whether they violated Mr. Thomasson's constitutional rights, Defendants argue they are entitled to qualified immunity. For the reasons explained below, I find that Defendants are entitled to summary judgment on both

claims. Because Defendants are entitled to summary judgment on the merits of the claims, I do not consider whether they are entitled to qualified immunity.

I.   **Procedural Due Process Violations**

Mr. Thomasson argues Defendants violated his procedural due process rights by (1) putting him in solitary confinement for 26 days without explanation or adequate notice of a hearing, and (2) sending him to a prison in Florida, where he remains in solitary isolation. Defendants argue they are entitled to summary judgment on this claim under both theories because Mr. Thomasson has failed to show they violated a protected liberty interest, either under the Due Process Clause itself or under state law. *See LaFleur v. Nooth*, 2:12-CV-00637-SI, 2014 WL 1236138, at *3 (D. Or. Mar. 25, 2014) ("The Due Process Clause of the Fourteenth Amendment protects liberty interests that arise either under the clause itself or under state law." (citing *Chappell v. Manderville*, 706 F.3d 1052, 1062 (9th Cir. 2013)). For the following reasons, Mr. Thomasson has failed to show that Defendants violated a liberty interest created under the Due Process Clause itself or under state law. As such, I GRANT summary judgment in Defendants' favor on Claim I.

   A.  *Due Process Violation Arising From the Clause Itself*

The Due Process Clause in itself "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citation omitted); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."(citation omitted)). Standing alone, it "does not confer a liberty interest in freedom from the conditions or degree of confinement ordinarily contemplated by a prison sentence." *LaFleur*, 2014 WL 1236138, at *3; *see also Sandin*, 515 U.S. at 480

(explaining that the Due Process Clause "confers no liberty interest in freedom from state action taken within the [criminal] sentence imposed." (citation omitted) (internal quotation marks omitted)). "[A]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him . . . the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Chappell*, 706 F.3d at 1063 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

A prisoner's transfer to a maximum security facility or a prison with more burdensome conditions is "within the normal limits or range of custody" that a state may impose and not itself a due process violation. *Sandin*, at 478 (citation omitted). This is so because even if "life in one prison is much more disagreeable than in another," such circumstances do not themselves implicate a Fourteenth Amendment liberty interest. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Transfers between institutions . . . are made for a variety of reasons and often involve no more than informed predictions as to what would [] best serve institutional security or the safety and welfare of the inmate."); *see also Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (adopting *Meachum* for interstate transfers and explaining that "an inmate has no justifiable expectation . . . that he will be incarcerated in any particular State"). Similarly, temporary placement in administrative segregation does not itself constitute a due process violation. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

Here, under *Meachum*, *Sandin*, *Olim*, and *May*, it is clear that Mr. Thomasson's claims grounded in his placement in administrative segregation and transfer to Florida do not, standing alone, rise to the level of a constitutional due process violation. Accordingly, Defendants are entitled to judgment as a matter of law on Claim I on the theory that they violated Mr.

Thomasson's Fourteenth Amendment procedural due process rights simply by placing him in administrative segregation and then transferring him to Florida.

### B. *State-Created Liberty Interests*

Under certain circumstances, states may create liberty interests that are entitled to protection by the Due Process Clause. *Sandin*, 515 U.S. at 483-84. State-created liberty interests arise when the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In such cases, the Due Process Clause requires "minimum procedures . . . to insure that the state-created right is not arbitrarily abrogated." *Meachum*, 472 U.S. at 226 (citation omitted) (internal quotation marks omitted).

"[T]here is no single standard for determining whether a prison hardship is atypical and significant and that analysis . . . requires case by case, fact by fact consideration." *Chappell*, 706 F.3d at 1064 (citation omitted) (internal quotation marks omitted). The test focuses on "an examination of the hardship caused by the prison's challenged action relative to the basic conditions of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (internal quotation marks omitted).

The Ninth Circuit has identified three markers, based on *Sandin*, for determining whether a hardship is atypical and significant in relation to the ordinary incidents of prison life. *Chappell*, 706 F.3d at 1064. First, courts consider "whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous discretionary confinement settings." *Id.* at 1064-65 (internal quotation marks omitted). This is typically a fact-intensive inquiry that requires a body of evidence to perform the comparative analysis. *See Sandlin*, 515 U.S. at 485-86 (conducting a fact-intensive analysis comparing the inmates inside and outside the challenged conditions). Second, courts look at the "duration and intensity of the conditions

of confinement." *Chappell*, 706 F.3d at 1065. Third, they look at whether the change in confinement would "inevitably affect the duration of [the prisoner's] sentence." *Id.*

Mr. Thomasson argues that the circumstances surrounding his placement in administrative segregation, hearing, and transfer to Florida were atypical and caused a significant hardship in relation to the ordinary incidents of prison life. As a result, because he was not afforded some due process, he argues Defendants' actions hindered his state-created liberty interests and violated of his Due Process Rights. As explained below, I find that Mr. Thomasson has failed to show his stay in administrative segregation and transfer to Florida invoked a state-created liberty interest requiring some due process. As such, he was not entitled to some due process before those actions occurred. Accordingly, Defendants are entitled to summary judgment on Claim I under the theory that they violated Defendant's due process rights based on a state-created liberty interest.

### 1. Administrative Segregation

In general, "administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). For example, a relatively brief stay in disciplinary segregation does not, in itself, invoke a liberty interest. *Sandin*, 515 U.S. at 486 (explaining that a 30-day stay did not invoke a liberty interest); *see also Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (explaining that fifteen days of segregation did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life). But an indefinite duration in isolation or abnormally harsh conditions may cause an atypical and significant hardship. *See Wilkinson*, 545 U.S. at 224. Indeed,

conditions that would otherwise violate the Eighth Amendment would impose an atypical and significant hardship.[1]  *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

In *LaFleur*, for example, this Court held that an inmate who was housed in administrative segregation for 86 days without a hearing, which violated an Oregon regulation, did not experience an atypical and significant hardship compared to the ordinary incidents of his life in prison. 2014 WL 1236138, at *5. Judge Simon based his holding on the facts that Mr. LaFleur's segregation was not indefinite and the conditions of his stay in administrative segregation were relatively normal. *Id.*

Similarly, here, Mr. Thomasson has not alleged facts from which one could conclude his placement in administrative segregation constituted an atypical and significant hardship, such that it invoked a state-created liberty interest. Under the first *Chappell* factor, Mr. Thomasson has not stated facts to suggest the actual conditions in administrative segregation were intolerable compared to the ordinary conditions of prison life. Under the second *Chappell* factor, the duration was relatively short. He was in solitary confinement for 28 days, which is relatively short and not long enough by itself to invoke a liberty interest. Finally, under the third factor, there is no evidence to show that Mr. Thomasson's placement in administrative segregation extended the length of his incarceration. Accordingly, Defendants are entitled to summary

---

[1] I am sensitive to research suggesting that the conditions to which inmates in solitary confinement are subjected often lead to profound psychological peril for the inmate, and as such, the use of solitary confinement itself may implicate an Eighth Amendment violation. *See Ruiz v. Texas*, 137 S. Ct. 1246 (2017) (Breyer, J., dissenting); *Davis v. Ayala*, 135 S. Ct. 2187 (2015) (Kennedy, J., concurring) (discussing "[t]he human toll wrought by extended terms of isolation"); Alex Kozinski, *Worse Than Death*, 125 Yale L.J. Forum 230, 231-33 (2016) (recounting research regarding the impacts solitary confinement has on prisoners and noting "it should come as no surprise that 'incarceration in solitary cause[s] severe exacerbation or recurrence of preexisting illness, or the appearance of an acute mental illness in individuals who had previously been free of any such illness'" (citation omitted)). But this is not the law of the land. *See Wilkinson v. Austin*, 545 U.S. at 224-25 (noting that long-term solitary confinement itself is not unconstitutional); *see also Hutto v. Finney*, 437 U.S. 678, 685 (1978) (explaining that solitary confinement, while a "form of punishment subject to scrutiny under Eighth Amendment standards," is not itself unconstitutional).

judgment on the claim that putting Mr. Thomasson in administrative segregation for 28 days without a hearing violated his procedural due process rights under the Fourteenth Amendment.

### 2. Hearing

Mr. Thomasson argues that the hearing he received while in administrative segregation was inadequate. But, because Mr. Thomasson was not entitled to due process for his brief stay in administrative segregation, as explained above, he was not entitled to a hearing at all. Thus, administrative or procedural errors that he alleges occurred at the hearing cannot serve as the basis for a violation of the Fourteenth Amendment's Due Process Clause.

Even if Mr. Thomasson had shown that his conditions in administrative segregation constituted an atypical and significant hardship, and thus implicated a protected liberty interest, he has failed to show he was not afforded the minimal due process required during his administrative segregation hearing. "[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453 (1985). But officials must only "provide the inmate with some notice of the charges against him and an opportunity to present his views to the prison official charged." *Bruce v. Yist*, 351 F.3d 1283, 1287 (9th Cir. 2003) (citation omitted) (internal quotation marks omitted)). In addition, officials must have "some evidence" to support their underlying decision to move an inmate into administrative segregation. *Hill*, 472 U.S. at 455-56 ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion.").

Mr. Thomasson argues he was not provided with minimal due process because another inmate's name was written on his notice of hearing. As a result, he argues he was unable to present facts or material witnesses to prove his innocence. Defendants concede this mistake

occurred, but they state the error was fixed on the record at the hearing. Mr. Thomasson argues that is not true. Regardless, a typographical error by itself is not a sufficient allegation for a due process violation. Mr. Thomasson does not allege he did not attend the hearing or that he did not receive any notice of the reasons for his segregation. More fundamentally, he does not allege that he thought the hearing notice was not intended for him at all, and he does not explain why he was unable to present hearing officials with facts or witnesses at the hearing.

Defendants have also provided some evidence to support their decision to place Mr. Thomasson into administrative segregation—he was the subject of an investigation into a prison gang's conspiracy to have a staff member at the prison assaulted. Regardless of whether his participation in plan to assault a staff member was true, his alleged involvement in a conspiracy is "some evidence" to support the placement. Thus, Mr. Thomasson has failed to show facts from which a jury could find he was not afforded minimal due process at his administrative segregation hearing, should he have been entitled to due process at all. Accordingly, Defendants are entitled to summary judgment on the theory that they failed to afford Mr. Thomasson due process when they gave him a notice of a hearing that named another inmate.

### 3. Transfer to Florida

Finally, Mr. Thomasson alleges his involuntary transfer to Florida constituted a deprivation of his procedural due process rights. Specifically, Mr. Thomasson argues he was entitled to a pre-transfer hearing before he was sent to Florida.

Because Mr. Thomasson was not entitled to a pre-transfer hearing under the Due Process Clause itself, as explained above, this claim can only proceed if he was entitled to due process based on a state-created liberty interest. *See Sandin* 515 U.S. at 483-84; *see also Wilkinson*, 545 U.S. at 221-22. Indeed, although unclear, Mr. Thomasson appears to allege that his conditions of

confinement in Florida constitute an atypical and significant hardship in comparison to ordinary incidents of prison life, and thus, they implicate a protected liberty interest. Specifically, Mr. Thomasson argues that he was housed in general population in Oregon, but in Florida he has been assigned to an alleged "supermax" prison, where he spends 23 hours a day in solitary isolation. Mr. Thomasson alleges this condition of incarceration has been imposed for an indefinite period of time, and he argues it is harsher and more restrictive than what an Oregon inmate could be expected to endure. Furthermore, he alleges his period of confinement was extended upon his transfer to Florida.

The specific theory under which Mr. Thomasson bases his claim is unclear. For example, he may be arguing that his conditions of confinement in Florida are harsher in comparison to the conditions of confinement that other inmates in Florida experience. That claim, in itself, could not be made against prison officials in Oregon, however, because they are not responsible for Mr. Thomasson's conditions of confinement in Florida under the Interstate Corrections Compact. *See* Rev. Stat. § 421.245 (2014). In other words, should his conditions of confinement in Florida violate his constitutional rights, he must bring a claim against the proper officials in Florida.

Still, Mr. Thomasson could plausibly claim that he was entitled to some due process before his transfer to Florida under the theory that Defendants knew he would experience conditions of confinement there that constitute an atypical and significant hardship in comparison to his conditions of confinement in Oregon. Indeed, this is the claim Mr. Thomasson seems to make in his Amended Complaint and opposition to summary judgment.

In order to determine whether Mr. Thomasson's transfer imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life that he experienced in Oregon, I must apply the three factors adopted in *Chappell*. The first factor requires me to

determine whether the conditions of solitary isolation in Florida mirror the conditions imposed upon inmates in analogous settings. To be sure, it is unclear how "analogous settings" are defined under this test. Specifically, it is not clear whether I should look at similar settings of solitary confinement in Florida or similar settings in Oregon. I do not need to answer this question, however, because Mr. Thomasson has failed to allege facts showing that his conditions of confinement are atypical and pose a significant hardship under either scenario.

Mr. Thomasson makes conclusory assertions that no prisoner in Oregon would be subjected to the extremely harsh and restrictive conditions that he experiences in Florida and that confinement under Close Management status is not a classification in Oregon. But those conclusory assertions are not supported with facts. For example, Mr. Thomasson did not cite to Oregon statutes, regulations, or policies governing the use or non-use of solitary isolation in Oregon. While he may believe solitary isolation is not used in Oregon, there are simply no facts to substantiate that belief. To the extent that he believes the conditions of confinement in solitary isolation in Oregon are less restrictive or severe than the conditions in Florida, he again failed to allege any facts to support that belief. To the extent I should compare Mr. Thomasson's conditions of confinement in solitary isolation to other prisoners in Florida, he has failed to allege any facts to support an argument that he is subjected to atypical conditions in comparison to other Florida inmates. Accordingly, there are no facts to show that Mr. Thomasson's conditions of confinement are atypical or harsh in comparison to the conditions in analogous settings.

Under the second *Chappell* factor, I look at the duration and intensity of Mr. Thomasson's confinement in solitary isolation to determine whether they are atypical or harsh. Mr. Thomasson argues his stay in solitary isolation is perhaps indefinite. I presume this means

he is unaware of a date in which he will be returned to general population. Mr. Thomasson also states that he is isolated for 23 hours a day. I agree with Mr. Thomasson that Oregon prison officials may have owed him some due process before transferring him to Florida if they knew that he was going to be indefinitely subjected to solitary isolation without any due process in Florida. But there is no evidence to support a claim that officials in Oregon knew or should have known that Mr. Thomasson's Close Management classification would be indefinite or without some due process afforded to Mr. Thomasson.

Indeed an exhibit provided by Mr. Thomasson shows at least one periodic review of his classification in Close Management has occurred since he arrived in Florida. The periodic review, where he was allowed to present evidence on his behalf, occurred about six months after he arrived in Florida. This evidence contradicts his assertion that his stay in solitary isolation is indefinite because it shows that his stay is actually under periodic review.

Finally, as to the third *Chappell* factor, Mr. Thomasson claims his release date has been extended since his transfer to Florida, and thus, the transfer affected the duration of his sentence. To support his claim, Mr. Thomasson points to a document from the prison in Florida that states his release date is February 28, 2039. Defendants argue that his release date has not changed and they attached a declaration from the Policy Manager of the Office of Offender Information and Sentence Computation, who states that Mr. Thomasson's release date remains June 28, 2036. Oregon Revised Statute § 421.245, which governs Oregon's participation in the Interstate Corrections Compact, states that Oregon will maintain jurisdiction over Mr. Thomasson for the purposes of effectuating his release on probation or parole, or his discharge from custody. Or. Rev. Stat. § 421.245 Art. IV subsec. 3 (2014). As such, Oregon is responsible for determining Mr. Thomasson's release date, not Florida. To the extent Florida has miscalculated this date, it is

not controlling, and thus, a jury could not conclude based solely on a document from Florida that Mr. Thomasson's release date has been extended as a result of his transfer.

After reviewing the *Chappell* factors, I find that Mr. Thomasson's transfer to Florida without a pre-transfer hearing did not violate his procedural due process rights under the Fourteenth Amendment because he has not shown that the transfer invoked a state-created liberty interest. Accordingly, Defendants are entitled to summary judgment on this theory of liability for Claim I.

## II. Access to the Courts

Mr. Thomasson's second claim is grounded in his assertion that his incarceration in Florida is impeding his constitutional right of access to the courts in Oregon. Specifically, he argues he was unable to file two civil claims, including a claim related to a late-2013 stay in disciplinary segregation for twenty-two days and a claim related to property that was missing after he was released from disciplinary segregation. In addition, Mr. Thomasson claims he was unable to object to a motion for extension of time on a habeas case that was pending in this Court. He argues Defendants are responsible for this violation because they either recommended his transfer to Florida or because they did not enforce alleged provisions of the Interstate Corrections Compact that he claims requires the sending institution to ensure he maintains access to needed legal materials in the receiving institution.

Defendants move for summary judgment on Mr. Thomasson's access-to-courts claim on several grounds. First, Defendants argue that he has access to Oregon legal materials. By regulation, Mr. Thomasson can seek legal materials and assistance from inmate legal assistants through correspondence directed to a library coordinator at any Oregon Department of

Corrections facility.[2] Accordingly, they state that he cannot show, as a matter of law, that he was denied access to the courts. Second, Defendants argue that a fact-finder could not conclude that he suffered the type of prejudice necessary to state an access-to-courts claim. Specifically, his property claim is not the type of claim to which his right to access courts attaches, and his inability to object to an adversary's request for extension of time is not sufficiently prejudicial. Finally, Defendants argue Mr. Thomasson cannot show that they caused his injury because there are no facts showing they had any involvement with his access to library materials. In other words, he has sued the wrong defendants.

Mr. Thomasson claims he has attempted to utilize law library resources in Oregon to no avail. Specifically, he states he has "written the Oregon state penitentiary law library many times and has either got no response, a delayed response of a long period of time, partial documents or just the face sheet of a document." Further, he states that he cannot complete complaints for his claims without the help of a legal assistant who is knowledgeable in Oregon law. Finally, he asserts that he cannot "shepardize meaningful legal material without access to the books provided in Oregon [sic] law library." For the following reasons, I find these allegations to be insufficient to prove Defendants violated Mr. Thomasson's constitutional right to access the courts, and thus, Defendants are entitled to summary judgment on Claim II.

Incarcerated individuals have a fundamental constitutional right to access the courts in order to litigate the legality of their detention or challenge the conditions of their confinement, and prison officials cannot actively interfere with their attempts to prepare legal documents. *See*

---

[2] The relevant regulation states:

> Oregon inmates from out-of-state facilities (state and federal) may access Oregon legal research materials and assistance from assigned inmate legal assistants through correspondence directed to a library coordinator of an Oregon correctional facility. Requests for law library services from Oregon inmates in out-of-state facilities will be processed with reasonable diligence.

Or. Admin. R. 291-139-0035(6) (2017).

15 – OPINION AND ORDER

*Lewis v. Casey*, 518 U.S. 343, 350, 355 (1996). But "a prison system need not provide maximum or even optimal level of access." *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999). Inmates must only be afforded the tools "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 354-55. In fact, courts recognize that "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

An inmate challenging his access to the courts in a particular facility must prove he suffered an "actual injury," which requires him to "demonstrate that [his] nonfrivolous legal claim ha[s] been frustrated or was being impeded" by the prison. *Id.* at 353; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (concerning the inability to file a complaint or defend against a charge). A failure to show that a "nonfrivolous legal claim has been frustrated" is fatal to the access to court claim. *Lewis*, at 353 & n. 4.

Further, the inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. He may, for example, show that a complaint was dismissed for failure to satisfy a technical requirement that he could not have known about, given the deficiencies in the prison's legal assistance facilities. *Id.* Similarly, he may show that he was "stymied by inadequacies of the law library" to even file a complaint on an "arguably actionable harm" that he suffered." *Id.* Ultimately, "access to court claims brought against prison officials must be judged within the deferential rubric of *Turner v. Safely*, 482 U.S. 78, 89 (1987), where 'a prison regulation impinging on inmates' constitutional rights is valid if it is reasonably related to a legitimate penological interest.'" *Harper v. Premo*, No. 6:13-cv-00097-MO, 2014 WL 1309370, at *7 (D. Or. Mar. 28, 2014), *on reconsideration in part*, No. 6:13-CV-00097-MO, 2014 WL 3818681 (D. Or. Aug. 4, 2014). Accordingly, a policy

that causes inmates to experience a relatively short delay in receiving their legal materials is constitutionally acceptable when it is rationally related to legitimate penological interest. *See id.*

Here, Mr. Thomasson's difficulty accessing Oregon law legal materials does not rise to the level of a constitutional violation. The case related to his missing property is not one related to challenging his sentencing or otherwise challenging his conditions of confinement. Such a case, quite simply, amounts to one of those incidental consequences of conviction and incarceration. Similarly, his complaint about being unable to object to a request for extension of time in his habeas case does not constitute an injury that rises to the level of a constitutional violation. Mr. Thomasson could still pursue his habeas petition, so there is no evidence that his claim was impeded.

The only remaining allegation centers on Mr. Thomasson's allegation that he was unable to file a claim for what he alleges was an illegal confinement in disciplinary segregation. Such a claim sounds in a "conditions of confinement" challenge, for which Mr. Thomasson would have a constitutional right to access the courts for redress. But Mr. Thomasson has not shown that his access to courts to pursue this claim was actually impeded.

Oregon regulations provide for a mechanism for out-of-state inmates to receive legal assistance on Oregon law. *See* Or. Admin. R. 291-139-0035(6) (2017). While Mr. Thomasson alleges he contacted penitentiaries in Oregon, he does not provide any evidence of who he contacted and when. His exhibits include requests that he appears to have sent to the law library in Florida, to which he received responses indicating the requested materials were not available or that he could only request materials related to Florida law. He provides no evidence to show he followed Oregon's procures for out-of-state inmates to receive Oregon law materials. Accordingly, because Defendants have shown Mr. Thomasson had a method for receiving the

constitutionally-required assistance, and because Mr. Thomasson has not shown those procedures were not available to him, Defendants are entitled to judgment as a matter of law on those issues.

## CONCLUSION

For the reasons stated above, I GRANT Defendants' Motion for Summary Judgment [82] and DISMISS Mr. Thomasson's claims with prejudice.

IT IS SO ORDERED.

DATED this __2nd__ day of June, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge